# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CALABRESE, RACEK & MARKOS, INC. | ) ) | CASE NO.  5:12-cv-02891-SL |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| RICHARD RACEK, SR., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This case comes before the Court upon defendants' motion to dismiss (Doc. No. 15) pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Plaintiff has filed a response in opposition (Doc. No. 17), and defendants have filed a reply (Doc. No. 18). The matter is ripe for determination. For the reasons that follow, defendant's motion is **GRANTED**.

## I. FACTUAL BACKGROUND

The following facts are presented as alleged in plaintiff's complaint and should not be construed as the Court's findings of fact. Plaintiff Calabrese, Racek & Markos, Inc. ("CRM" or "plaintiff") is an Ohio corporation in the business of providing real estate appraisal services. (Doc. No. 1 ¶ 12.) Defendants Richard Racek, Sr., Richard Racek, Jr., and Clifford D. Feierabend (collectively, the "individual defendants") are shareholders of CRM and had independent contractor agreements with CRM under which they performed appraisal services on CRM's behalf. (Doc. No. 1 ¶ 14.)

For "at least" the last twenty years, CRM has used the trade name "CRM Real Estate Services" on its letterhead, business cards, and communications with the public. (Doc. No. 1 ¶ 15.)[1] It appears on the sign outside the elevator leading to CRM's office, and it is the name regularly used by the media in referring to the company. (Doc. No. 1 ¶¶ 15–16.) The individual defendants have used the name on business cards and in dealing with the public on CRM's behalf. (Doc. No. 1 ¶ 17.)

On or about September 7, 2012, the individual defendants established a company called "CRM Real Estate Services, LLC," which they created to compete with CRM in the real estate appraisal business. (Doc. No. 1 ¶¶ 18–19.) On September 13, 2012, CRM terminated its independent contractor relationship with the individual defendants. (Doc. No. 1 ¶ 23.) CRM and the individual defendants agreed that work the individual defendants had performed prior to September 13, 2012 would be payable to CRM, which would pay the individual defendants their share as per the previously-installed independent contractor agreements. (Doc. No. 1 ¶ 25.)

After September 13, 2012, CRM made repeated requests of the individual defendants that they dissolve CRM Real Estate Services, LLC. (Doc. No. 1 ¶ 29.) Although the statutory agent for CRM Real Estate Services, LLC represented to CRM that the company would be dissolved and the trade name returned, that has yet to occur. (Doc. No. 1 ¶ 30.) Also at some point after September 13, 2012, the individual defendants formed defendant Racek & Associates, LLC ("R&A"). (Doc. No. 1 ¶ 26.)

---

[1] The Complaint actually states that CRM has used the name "for at least the last twenty (20)," omitting the word "years." (Doc. No. 1 ¶ 15.) Plaintiff supplies the missing word in its opposition. (Doc. No. 17 at 86.)

On November 20, 2012, CRM filed suit against the individual defendants and R&A, claiming that defendants' actions are in violation of the Lanham Act and seeking an injunction preventing defendants from utilizing the name CRM Real Estate Services or any other substantially similar name. (Doc. No. 1 ¶¶ 32–40.) CRM also asserted state law claims for deceptive trade practices, breach of fiduciary duty, unjust enrichment, and breach of contract. In response, defendants brought the instant motion, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, asserting that the Court lacks jurisdiction over Count I of CRM's complaint—the alleged Lanham Act violation—and that Count I fails to state a claim upon which relief can be granted. (Doc. No. 15.)

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) come in one of two main varieties: facial attacks and factual attacks. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A *facial* attack is an attack on the complaint itself. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* "Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Outokumpu*, 673 F.3d at 440. Here, defendants have raised a facial attack on CRM's

3

complaint. Thus, the Court must apply the same standard applicable to Rule 12(b)(6) motions.

**B. Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds to his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal.* 556 U.S. at 678–79. "While

4

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III. LAW AND ANALYSIS

"'The touchstone of liability under [the Lanham Act] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of goods offered by the parties.'" *Stilson & Assocs., Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 996–97 (6th Cir. 2005) (alteration in original) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)). Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A),[2] provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
> >
> > . . .

---

[2] Plaintiff's complaint does not identify which subsection of § 1125 it is suing under. But because plaintiff does not plead any facts related to alleged false advertising, importation of goods, famousness of its trade name, or cyberpiracy (requisites of § 1125(a)(1)(B), (b), (c), and (d), respectively), nor discuss those issues in its brief, the Court infers that subsection (a)(1)(A) is the only subsection potentially applicable to plaintiff's Lanham Act claim.

shall be liable in a civil action by any person who believes that he or she is
or is likely to be damaged by such act.

Protection of trade names is based on the same principles as that of trademarks and service marks. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999); *McCarthy on Trademarks and Unfair Competition*, § 9:1 (4th ed.).

## A. Use in Commerce

As a prerequisite to liability under § 1125(a)(1)(A), defendants must "use in commerce" the protected trade name. *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996). Use in commerce occurs where the trademark is used "'as a trademark, capitalizing on its trademark status.'" *Bird v. Parsons*, 289 F.3d 865, 879 (6th Cir. 2002) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 880 (9th Cir. 1999)); *see also Prestonettes, Inc., v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."). With respect to services, a mark is in use in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C. § 1127. Use of a trade name not "'in connection with the sale . . . or advertising of any goods or services,' and not likely to cause confusion, is outside the jurisdiction of the Lanham Act . . . ." *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (first alteration in original).

The only "use" of CRM's trade name alleged in its complaint is the individual defendants' incorporation of CRM Real Estate Services, LLC. CRM's other allegations all speak only to the individual defendants' intent in forming the company, their request that CRM stop using the "R" in its trade name, and their refusal to dissolve

6

the company, despite the alleged representation to the contrary by the company's statutory agent.[3]

Several federal courts have held that mere incorporation is not enough to satisfy the "use in commerce" requirement. The closest case on point is *Enea Embedded Tech., Inc. v. Eneas Corp.*, No. 08-CV-1595-PHX-GMS, 2009 WL 648891 (D. Ariz. 2009). In *Enea*, plaintiffs alleged trademark infringement and unfair competition based on defendants' alleged use of their "ENEA" mark in commerce by registering the business names Enea, Inc., Enea Embedded Technology, Inc., Enea AB, Inc., and Eneas Corporation. Plaintiffs also asserted that defendants used their mark in correspondence with plaintiffs by offering to consent to one plaintiff's name change in exchange for consideration, by declaring their exclusive use of the registered names in Arizona, and by demanding that plaintiffs cease from using those names. *Id.* at *4. However, the court found that the alleged registrations were not allegations that defendants used the ENEA mark "on or in connection with any goods or services," and so the complaint was dismissed for lack of subject matter jurisdiction. *Id.* at *7.

Another case, *CNA Fin. Corp. v. Brown*, 922 F. Supp. 567 (M.D. Fla. 1996), presented a similar situation. There, plaintiff CNA FINANCIAL CORPORATION owned three service marks, two based upon "CNA" and one based upon the phrase "INSURANCE FROM CNA," as well as two unregistered trade names, "CNA" and "CNA Insurance Companies." *Id.* at 570–71. Defendant incorporated a company named "CNA Insurance, Inc." and registered "CNA Insurance Company" as his company's trade

---

[3] Indeed, CRM alleges nothing whatsoever in its Lanham Act claim with respect to defendant R&A.

name. *Id.* at 571. The plaintiff brought suit under the Lanham Act, seeking to enjoin defendant from using any form of the consecutive letters "CNA." *Id.* at 572. The court found that plaintiff failed to prove that defendant and his company "used any name in connection with services" because neither defendant nor his company ever offered any services. *Id.* at 573–75. Accordingly, both plaintiff's trade name infringement and service mark infringement claims failed. *Id.*; *see also Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cnty*, No. CV F 09-1988 LJO SMS, 2010 WL 843131, at *7 (E.D. Cal. Mar. 10, 2010) (filing articles of incorporation with same name that had been used previously by plaintiff not a use in commerce).

A third case, *Hertz Corp. v. Knickerbocker*, 206 F. Supp. 305 (S.D.N.Y. 1962), saw the court dismiss for lack of standing where plaintiff, owner of the "Hertz" mark, sued defendant, who had incorporated a company called the "Association of Hertz Licensees, Inc." Although the articles of incorporation stated the company would operate "wherever automobile and truck rental and leasing business is conducted," and plaintiff operated just such a business, the court ruled in defendant's favor, stating:

> The Lanham Act does not afford protection against intention, but only against overt acts. Until something is done to carry out the announced purposes of the organization, the protection of plaintiffs' mark has not been invaded. I assume what plaintiffs wish to do here is nip in the bud any contemplated activities by the defendants, but the Act does not afford this type of relief.

*Id.* at 306; *see also U-Haul Int'l, Inc. v. Kresch*, 943 F. Supp. 802, 810 (E.D. Mich. 1996) (the court "cannot look to the defendants' *intent* as a ground for a § 1125 violation, but

must first find an *actual use* of the mark or use of a *misleading representation*") (emphases in original).[4]

Defendants argue in their motion, citing many of the above-referenced cases, that CRM's Lanham Act claim should be dismissed because it has not alleged that defendants used CRM's trade name in commerce. CRM, on the other hand, sidesteps the argument almost entirely, declining to distinguish any of defendants' authority. Instead, CRM posits, without citing to any federal case law, that the availability of injunctive relief as a remedy means that "a plaintiff merely needs to show that there is the potential for the type of confusion contemplated by the Lanham Act in the future." (Doc. No. 17 at 88–89.)[5]

Indeed, the only case even mentioned by CRM in responding to defendants' "use in commerce" argument is a decision out of the Lake County, Ohio Court of Common Pleas, denying summary judgment to a defendant on a common law trade name infringement claim where the defendant incorporated two businesses under names that had formerly belonged to plaintiff, but had lapsed. (Opinion & Journal Entry, *Jack F. Neff Sand and Gravel, Inc., v. Great Lakes Crushing, Ltd.*, No. 11 CV 000003, 2012 WL 6215571 (Ohio Com. Pl. Feb. 23, 2012), Doc. No. 17-1 at 94–95.) *Neff*, of course, is not binding upon this Court, nor does the brief discussion therein, which also

---

[4] Moreover, on the much-litigated issue of potential infringement resulting from registration of an internet domain name, "nearly every Court to have decided whether mere registration or activation of a domain name constitutes 'commercial use' has rejected such arguments, even when the domain name or names included the .com designation." *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 507 (D. Md. 1999) (collecting cases); *see also Bird*, 289 F.3d at 879 (affirming a district court ruling of same); *Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 532 (D. Mass. 1995) ("mere registration" of a trademark is not "use" of the mark).

[5] CRM's arguments that it "should not have to wait around for . . . future use [of its trade name] to occur" and that "the purpose of injunctive relief is to avoid those damages ever having to accrue" are at best in tension with, and at worst in contradiction of, its averment in the complaint that it "has been damaged . . .

does not cite to any supporting legal authority, suggest any principles that might guide this Court in deviating from the prevailing view as it pertains to Lanham Act claims.[6]

Because "use in commerce" is a required element of a claim of trade name infringement, and because the activities alleged in CRM's complaint, if true, still fall short of "use in commerce," plaintiff has failed to plead facts necessary to state a plausible Lanham Act claim.[7] Accordingly, that claim must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).[8]

## B. Plaintiff's State Law Claims

In addition to its Lanham Act claim, CRM asserts four state law claims and contends that the Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367. (Doc. No. 1 at ¶ 9.) However, where, as here, plaintiff's only federal

---

and will continue to suffer additional, irreparable harm absent injunctive relief." (Doc. No. 1 ¶ 38.)

[6] Some courts have found that a Lanham Act claim can exist before a defendant begins to offer its services, as long as the defendant's actions are "imminent and impending." *See Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1335 (E.D. Mo. 1996) (denying a motion to dismiss where defendant maintained a website advertising its services and soliciting names and addresses of internet users for a mailing list). CRM does not plead in its complaint that defendants' infringement is "imminent and impending," nor do any of its factual assertions render such a conclusion plausible. Further, CRM does not claim imminent and impending infringement in its briefing, instead simply positing the "potential" for a Lanham Act violation in the future.

[7] CRM also fails to plead necessary facts to indicate this Court's jurisdiction over its trade name. "The protections of the Lanham Act extend to all marks in 'commerce,' which is defined as 'all commerce which may lawfully be regulated by Congress.'" *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 854 (6th Cir. 2010) (quoting 15 U.S.C. § 1127). This includes intrastate commerce that has a substantial effect on interstate commerce. *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957). "'A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement.'" *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F. Supp. 2d 769, 779–80 (N.D. Ohio 2008) (quoting *Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980)). Nothing in CRM's complaint suggests that CRM has ever provided services or otherwise used its mark in interstate commerce.

[8] In addition, CRM does not directly plead a likelihood of confusion, although some of the facts alleged would bear on a typical likelihood of confusion analysis. Regardless, defendants' "use" of CRM's trade name as alleged in the complaint "simply cannot mislead consumers into buying a competing product[,] as there is no allegation that Defendants' use of the mark is before the public in connection with goods or services." *Enea*, 2009 WL 648891, at *6.

10

claim has been dismissed pursuant to Rule 12(b)(1), supplemental jurisdiction can never exist in this Court over plaintiff's state law claims. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). This is because "[a] Rule 12(b)(1) dismissal postulates that there never was a valid federal claim. Exercise of jurisdiction on a theory of supplemental jurisdiction would therefore violate Article III of the Constitution, because the original federal claim would not have 'substance sufficient to confer subject matter jurisdiction on the court.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Accordingly, under Rule 12(b)(1), the Court must dismiss plaintiff's state law claims.

Even if plaintiff's Lanham Act claim were dismissed solely pursuant to Rule 12(b)(6), the Court would similarly dismiss plaintiff's state law claims. In that instance, even if the Court could exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.

"After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical*, 89 F.3d at 1255. The presumption derives from the fact that a 12(b)(6) dismissal usually occurs early in the proceedings, when the Court has not invested significant resources into resolving the state claims, and from the general implication of a 12(b)(6) dismissal that the federal claim did not have sufficient substance to confer subject matter jurisdiction over supplemental claims. *Id.*

Here, dismissal of CRM's federal claim comes at an early stage of the litigation, as a result of CRM's failure to plead "use in commerce" of its trade name by

defendants, a prerequisite to a violation of 15 U.S.C. § 1125(a)(1)(A). Accordingly, the Court would decline to exercise supplemental jurisdiction over CRM's state claims pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED**. Pursuant to Rules 12(b)(1) and 12(b)(6), plaintiff's sole federal law claim is dismissed with prejudice, and plaintiff's remaining state law claims are dismissed without prejudice to refiling in an appropriate state court. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: July 26, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**